**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

BRENDA MORGAN, on behalf of herself and                                                            PLAINTIFFS
on behalf of all other persons similarly situated;
and DONNA KELLETT, on behalf of herself and
on behalf of all other persons similarly situated

v.                                                  No. 4:15CV00296

AFFILIATED FOODS SOUTHWEST, INC.                                                                   DEFENDANT

**OPINION AND ORDER**

Affiliated Foods Southwest, Inc., filed a petition for bankruptcy on May 5, 2009. The present action began as an adversary proceeding in bankruptcy on July 10, 2009. The plaintiffs filed a class action complaint, alleging that Affiliated Foods violated the Worker Adjustment and Retraining Notification Act (WARN Act)[1] by failing to give employees at least sixty days advance notice of termination. To preserve the limited estate assets, the parties agreed to stay the adversary proceeding. The plaintiffs filed a motion to lift the stay on February 27, 2015, which the bankruptcy judge granted on April 27, 2015. Three days later, Affiliated Foods filed a motion to withdraw the reference pursuant to 28 U.S.C. § 157(d), Bankruptcy Rule 5011, and Local Rule 83.1(c). Affiliated Foods contended that this Court had no discretion but to withdraw the reference and that even if it had discretion, the bankruptcy court did not have the constitutional authority to enter a judgment on the plaintiffs' WARN Act claim. The plaintiffs did not object to withdrawing the reference and the motion was granted. Now, the plaintiffs have filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23. Affiliated Foods opposes class certification, arguing that the plaintiffs failed to satisfy the requirements of Rule 23(a) and Rule 23(b)(3). For the following reasons, the motion for class certification is granted.

---

[1] 29 U.S.C. § 2101, *et seq.*

**I.**

Affiliated Foods is a wholesale food distribution company incorporated in Arkansas. It began to experience cash flow problems in 2008. To allay these problems, Affiliated Foods executives devised a check-kiting scheme to make it appear that it had sufficient funds to cover its expenses. U.S. Bank officials discovered the scheme in February 2009 and froze Affiliated Foods's line of credit. Affiliated Foods was unable to continue its operations and on May 5, 2009, it began to terminate employees. Affiliated Foods initially filed a Chapter 11 reorganization bankruptcy but converted it to a Chapter 7 liquidation bankruptcy. As Affiliated Foods began liquidating its assets, employees who were not terminated on May 5 were terminated in stages.

As noted, the plaintiffs commenced this action on July 10, 2009 as an adversary proceeding in the bankruptcy case. Document #1, *Morgan et al. v. Affiliated Foods Southwest, Inc. et. al.*, No. 4:09AP01176 (Bankr. E.D. Ark. July 10, 2009). The trustee sent notices of the right to file proofs of claim to approximately 400 Affiliated Foods employees on September 22, 2009, informing them that the bar-date was December 23, 2009. Document #978, *In re Affiliated Foods, Southwest, Inc.*, No. 4:09BK13178 (Bankr. E.D. Ark. May 5, 2009). In November, the parties filed a joint stipulation with the bankruptcy court in the adversary proceeding stating that they had discussed the lack of assets in the estate and the unlikelihood that there would be any funds available to the putative class, assuming that it was successful in pursuing its WARN Act claim. Document #24, *Morgan*, No. 4:09AP01176. The parties stipulated:

> In light of this uncertainty, and in an effort to conserve the already scarce assets of the estate, the Parties have stipulated to the entry of an Agreed Order staying this proceeding, as described below, to allow the Parties an opportunity to determine what, if any, additional assets will come into the estate.

On November 16, 2009, the bankruptcy court entered an order staying the action until either party moved for the stay to be lifted.  Document #25, *id*.  The plaintiffs moved to lift the stay on February 27, 2015.  Document #29, *id*.  Affiliated Foods then moved to withdraw the reference and open a new civil action in this Court.  Document #36, *id*.  The motion was granted and the action commenced in this court on May 27, 2015.  Document #1.  Today, the bankruptcy proceedings are ongoing but Affiliated Foods asserts that the trustee is near to finishing the administration of the estate and will soon be ready to make distributions.  Document #19 at 3.

**II.**

The WARN Act states that a person seeking to hold an employer liable for an unlawful mass layoff "may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred."  29 U.S.C. § 2104(5).  A valid WARN Act claim requires the presence of: (1) a mass layoff or plant closing as defined by the statute, conducted by (2) an employer who fired employees, (3) who, pursuant to the WARN Act, are entitled notice. 29 U.S.C. § 2102(a); 20 C.F.R. § 639.1(a).  The named plaintiffs–Morgan and Kellett–seek to enforce the WARN Act's mass-layoff provisions against Affiliated Foods through a class action on behalf of themselves and other former employees allegedly terminated without cause.  The plaintiffs propose the following class definition:

> All former employees of Defendant Affiliated Foods Southwest, Inc. ("AFS" or "Defendant") who worked at or reported to the facility located as 12103 Interstate 30, Little Rock, Arkansas 72209 (the "Facility") and who were terminated and/or laid off without cause on their part from their employment on or about May 5, 2009, or thereafter, as part of, or as the reasonably expected consequence of, the "mass layoff" or "plant closing" as defined by the Worker Adjustment and Retraining Notification (WARN) Act of 1988, 29 U.S.C. §§ 2101-2109 at the Defendant's Facility, and who do not file a timely request to opt-out of the class.

Document #11 at 8.

Federal Rule of Civil Procedure 23 governs class actions. First, the putative class must meet all of the requirements of Rule 23(a). Then, the putative class must satisfy one of the three subsections of Rule 23(b). Affiliated Foods objects to certification based on each 23(a) requirement and United States Supreme Court precedent requires district courts to undertake a "rigorous analysis" to ensure that all requirements of Rule 23(a) have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). The Rule 23(a) requirements for class certification are: (1) the putative class is so numerous that it makes joinder of all members impractical; (2) questions of law or fact are common to the class; (3) the class representatives' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule–that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551.

**A.     Numerosity**

The plaintiffs seek to certify a class of approximately 500 former Affiliated Foods employees. Document #2 at 6, ¶ 24; Document #11-4, 5. The putative class must be so numerous that joinder of all members is impractical. FED. R. CIV. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330, 100 S. Ct. 1698, 1706, 64 L. Ed. 2d 319 (1980). Several factors are relevant to whether the class is so numerous that joinder of all members is impracticable, such as the size of the class, the nature of the action, the size

of the individual claims, and the inconvenience of trying individual suits. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982).

First, the plaintiffs have offered a basis for the class size estimates provided by Kellett and Morgan. Document #11-4 at 3, ¶ 6; Document #11-5 at 3, ¶ 6. Documents filed under seal show that a potential class of more than 400 members exists. Document #26. The size of this class is a factor weighing in favor of finding that joinder of all members is impractical. *See Day v. Celadon Trucking Serv., Inc.*, No. 4:09CV00031-SWW, 2010 WL 3270760 at *3 (E.D. Ark. Aug. 16, 2010) (finding a putative class of 449 former employees sufficient to satisfy the numerosity requirement in a WARN Act case); *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 410 (D. Minn. 2007) (finding a putative class of 74 former employees sufficient to satisfy numerosity requirement in a WARN Act case); *Johnson v. GMAC Mortg. Grp., Inc.*, 2006 WL 1071748 at *2 (N.D. Iowa April 20, 2006) (finding a putative class of 83 former employees sufficient to satisfy the numerosity in a WARN Act case). Second, application of the WARN Act hinges on whether an employer's conduct affected a group of employees. Therefore, the nature of a WARN Act action[2] is a factor that militates in favor of an impracticability finding. *See Alberts*, 245 F.R.D. at 410. Third, the plaintiffs allege that the average claim for each potential class member is $10,000 or less. Document #11 at 10. Kellett

---

[2] Affiliated Foods argues that this Court must consider bankruptcy-related factors–whether the nature of the action permits class members to easily file proofs of claims in bankruptcy–in deciding numerosity. Document #19 at 24. To support this argument, Affiliated Foods cites to a Fifth Circuit case where the court considered bankruptcy factors in deciding whether a class action in an adversary proceeding was superior to filing individual proofs of claims. *See In re TWL Corp.*, 712 F.3d 886, 894-95 (5th Cir. 2013). But in its numerosity analysis the Fifth Circuit specifically noted: "Like [the appellant], we question whether some of the [bankruptcy-related factors] cited by the court have any bearing on whether [the appellant] satisfied Rule 23's numerosity requirement." *Id*. at 894. And in a footnote immediately following that sentence, the court stated: "Nevertheless, as we explain *infra*, certain of these factors may influence a court's superiority inquiry." *Id*. at 895 n.8.

supports this allegation in her affidavit, stating that her claim is for $5,280–excluding benefits–and Morgan states that her claim is for $10,000–excluding benefits. Document #11-5; Document #11-4. Both also state that they will be unable to pursue their rights under the WARN Act except through a class action. *Id*. The inability of potential class members to file individual lawsuits weighs in favor of an impracticability finding. *See Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D. 479, 487 (N.D. Iowa 2008). The plaintiffs have satisfied the numerosity requirement.

**B.     Commonality**

The plaintiffs base their action against Affiliated Foods solely on its alleged violation of the WARN Act. The class action complaint alleges that Affiliated Foods failed to give its employees 60 days notice that it would be terminating them as part of a mass layoff or plant closing. Document #2 at 7-9, ¶¶ 34-44. Rule 23(a)(2) requires plaintiffs to show there are common questions of law or fact. "[T]he plaintiff must 'demonstrate that the class members have suffered the same injury.'" *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015) (quoting *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551)). "What matters to class certification . . . is not the raising of common 'questions'–even in droves–but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551.

Here, common legal and factual questions include whether Affiliated Foods employed more than 100 employees, whether the plaintiffs were protected by the WARN Act, whether the plaintiffs were Affiliated Foods employees, whether Affiliated Foods was considered an "employer" under the WARN Act at the time it terminated the plaintiffs, whether Affiliated Foods terminated the plaintiffs without cause, whether those terminations were without sixty-day notice and as a result of a mass layoff or plant closing, and whether Affiliated Foods failed to pay the plaintiffs wages and

benefits. If the answer to each of those questions is yes, then the WARN Act claim is resolved as to the entire class, and Affiliated Foods will be liable to each class member for back pay and benefits pursuant to 29 U.S.C. § 2104(a)(1). *See also Presser v. Key Food Stores Coop. Inc.*, 218 F.R.D. 53, 58 (E.D.N.Y. 2003) (finding that whether the employer gave notice of layoffs as required by the WARN Act constituted a common question arising from the same course of events and giving rise to similar legal arguments to prove liability); *Gomez v. Am. Garmet Finishers Corp.*, 200 F.R.D. 579, 582 (W.D. Texas 2000) (finding that the plaintiffs and the putative class were united by the common legal question of whether the employer complied with the statutory notice requirements of the WARN Act). The plaintiffs have satisfied the commonality requirement.

**C.     Typicality**

The claims of Morgan and Kellett and the claims of the class members stem from a single event–the alleged mass layoff of Affiliated Foods employees without the requisite notice. "Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006). Kellett and Morgan have provided minutes from an Affiliated Foods Board of Directors meeting held on May 5, 2009, during which an individual gave the Board a report on how the employees would be terminated: "The larger group will be terminated today, with a gradual reduction over the next four weeks." Document #11-3. They have also provided minutes from a meeting held on June 16, 2009, during which the same individual gave the Board an update on current Affiliated Foods employees: "As

of last Friday June 12, 2009 there were forty nine remaining employees . . . Additional employees are scheduled for dismissal starting Friday June 19 . . ." Document #11-6. The other employees terminated have the same grievance as the named plaintiffs: They were allegedly terminated without the sixty days notice required by the WARN Act.

Affiliated Foods argues that the plaintiffs have failed to establish typicality because "neither Plaintiff did anything to acquire knowledge beyond their own personal circumstances" as to whether Affiliated Foods provided advance written notice of termination to its employees. Document #19 at 30. But the typicality "requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561-62. The claim of the representatives–Morgan and Kellett–and the claims of the class members–other former Affiliated Foods employees–stem from the layoffs discussed in the Board meetings. Morgan and Kellett do not have to prove at this stage in the proceedings that Affiliated Foods failed to provide advance notice of termination to its employees. The Court should delve into the merits "only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). At this stage, the Court accepts as true the plaintiffs' allegation that Affiliated Foods did not provide written notice of termination to its employees as required by the WARN Act. Though Affiliated Foods will be liable to each class member for a different amount if the claim succeeds, the need for individualized proof of damages will not on its own defeat class certification. *City of Farmington Hills Emp. Ret. Sys. v. Wells Fargo*

*Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). The plaintiffs have satisfied the typicality requirement.

D.     **Adequacy of Representation**

Morgan and Kellett have been the named plaintiffs in this action since it was commenced as an adversary proceeding against Affiliated Foods in bankruptcy on July 10, 2009. Rule 23(a)(4) requires the named plaintiffs to show they will fairly and adequately protect the interests of the class. The Court must consider whether the class representatives have common interests with the members of the class and whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton*, 688 F.2d at 562-63. Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Alpern*, 84 F.3d at 1539. A class representative is "not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999). Morgan and Kellett allege that Affiliated Foods terminated them without the requisite sixty-day notice. They share the class interest in procuring equitable relief in the form of back-pay and benefits pursuant to the WARN Act.

First, Affiliated Foods contends that Morgan and Kellett are not subject to a defense–the liquidating fiduciary principal–that applies to other putative class members, making Morgan and Kellett inadequate representatives. Document #19 at 28. But an inquiry into the adequacy of class representatives concerns whether the representatives are subject to a unique defense, not whether other members of the class are subject to a unique defense. *See In re Milk Prods. Antitrust Litig.*, 195 F.3d at 437. Furthermore, the Eighth Circuit has not recognized the liquidating fiduciary principle, which provides that a liquidating fiduciary in a bankruptcy case does not fit the definition

of an employer for purposes of the WARN Act. *See In re United Healthcare Sys., Inc.*, 200 F.3d 170, 177 (3d Cir. 1999) ("[W]hether a bankrupt entity is an 'employer' under the WARN Act depends in part on the nature and extent of the entity's business conduct and activities while in bankruptcy."). Even if the Court were to recognize the liquidating fiduciary principle, it is not proper to determine at this stage whether it shields Affiliated Foods from WARN Act liability.[3] The purpose of a class certification ruling is not to adjudicate the merits. It is for the Court to determine whether the class action mechanism is the appropriate avenue for resolution of the controversy at hand. *See Amgen Inc. v. Ct. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191, 185 L. Ed. 2d 308 (2013). The Court accepts as true the facts as alleged in the class action complaint, noting that Morgan and Kellett are not required at the certification stage to prove that the liquidating fiduciary principle does not apply. They have demonstrated to the Court's satisfaction that they are not subject to a unique defense that threatens to play a major role in litigation.

Second, Affiliated Foods argues that Morgan and Kellett have not demonstrated that they will vigorously prosecute the interests of the class because they failed to promptly move for class certification. Document #19 at 28-29. While an untimely motion for class certification may be grounds for a finding that a plaintiff will not adequately represent the interests of the class, here the plaintiffs' motion was not untimely and the circumstances of the case justified any delay. *See Cunningham v. St. Clair*, 77 F.R.D. 375, 377 (N.D. Miss. 1977). The record from the adversary proceeding shows that Morgan and Kellett delayed the pursuit of class certification, because after

---

[3] Affiliated Foods initially filed for Chapter 11 reorganization bankruptcy on May 5, 2009 and did not convert it to a Chapter 7 liquidation bankruptcy until July 6, 2009. By June 12, 2009, only 49 employees remained with additional employees scheduled for dismissal on June 19. Document #11-6. The larger group of employees was terminated on May 5 and–as admitted by Affiliated Foods–are unlikely to be subject to the defense at all. Document #11-4; Document #11-5; Document #19 at 28.

discussions with Affiliated Foods, they learned it was unlikely that there would be any funds available from the bankruptcy estate to satisfy a successful WARN Act claim. *Morgan*, No. 4:09AP014176, Document #24 at 1-2, ¶ 2. The parties agreed to stay the proceeding until they could determine whether additional assets would come into the estate. *Id.*, Document #24 at 2, ¶ 3. On February 27, 2015, Morgan and Kellett moved to lift the agreed stay because they learned there would likely be funds available to satisfy the claim. *Id.*, Document #29 at 2, ¶ 6. The bankruptcy judge lifted the stay on April 27, 2015 and three days later Affiliated Foods moved for withdrawal of reference to this Court. *Id.*, Document #36; Document # 41. The reference was withdrawn and the complaint was filed in this Court on May 27, 2015. On August 18, 2015, the parties filed their Rule 26 report. In that report, the plaintiffs requested that the Court set November 6, 2015, as the deadline for filing a motion for class certification, whereas the defendant requested that January 8, 2016, be the deadline for a class certification motion. Document #8 at 5. The Court then set November 16, 2015, as the deadline for filing a class certification motion. On November 16, 2015, in accordance with that deadline, Morgan and Kellett filed a motion for class certification. Document #11. Morgan and Kellett acted with reasonable dispatch and will fairly and adequately represent the interests of the class.

**III.**

As stated above, the plaintiffs seek to certify the class under Rule 23(b)(3), "the so-called 'common question' or 'damages' class action." *Blades*, 400 F.3d at 569. Rule 23(b)(3) governs "class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15, 117 S. Ct. 2231, 2445, 138 L. Ed. 2d 689 (1997). To qualify for certification under Rule 23(b)(3), a class

must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

"[T]his list is not meant to be exhaustive and the court has discretion to consider whatever other factors it deems relevant to the determination." 7AA CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1777 (3d ed. 2005).

### A. Predominance

The predominance inquiry considers whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623, 117 S. Ct. at 2249. The plaintiffs must show that questions common to the class predominate, but they are not required to show that those questions will be answered, on the merits, in favor of the class. *Amgen*, 133 S. Ct. at 1191. As discussed previously, the WARN Act by its nature lends itself to common issues that predominate over individual issues. *See In re Spring Ford Indus., Inc.*, No. 02-15015-DWS, 2004 WL 231010 at *9 (Bankr. E.D. Penn. Jan. 20, 2004). Liability is contingent upon Affiliated Foods terminating a large group of its employees. And while Affiliated Foods has raised the liquidating fiduciary principle as a defense, it argues that the defense only applies to some employees but not

others. Document #19 at 28. Therefore, that issue is subordinate to whether Affiliated Foods in fact terminated its employees without advance notice. Questions common to the class predominate.

**B.     Superiority**

Rule 23(b)(3) calls for a comparative analysis between the advantages and disadvantages of the class action mechanism and the advantages and disadvantages of the bankruptcy claims allowance process. *See In re Matter of TWL*, 712 F.3d at 896. To certify a class either within a bankruptcy as an adversary proceeding or parallel to a bankruptcy proceeding as a civil action, courts must closely scrutinize the facts and procedural history of the controversy at hand and determine that the class action is superior to the bankruptcy process for fairly and efficiently adjudicating the controversy.[4]

The superiority analysis is fact-specific, varying based on the particular circumstances of a case. *See In re TWL*, 712 F.3d at 896. *See also Gentry*, 668 F.3d at 94 ("Each bankruptcy case must be assessed on a case-by-case basis to determine whether allowing a class action to proceed would be superior to using the bankruptcy claims process."). Thus, "[c]ourts have expressed divergent

---

[4] This comparative analysis also arises prior to the class certification stage when bankruptcy courts use discretion provided by Bankruptcy Rule 9014 to apply Bankruptcy Rule 7023, which makes Federal Rule of Civil Procedure 23 applicable to non-adversarial bankruptcy proceedings. *See In re Matter of TWL,* 712 F.3d at 893. While bankruptcy courts engage in a two-step process–first deciding whether to apply Rule 7023 and then deciding whether the putative class meets the Rule 23 requirements–factors relevant to the superiority of the class action are often considered in the first step, as well as the second. *Gentry v. Siegel*, 668 F.3d 83, 94 (4th Cir. 2012); *In re MF Global, Inc.*, 512 B.R. 757, 768 (Bankr. S.D.N.Y. 2014). Therefore, cases dealing with the discretionary application of Rule 7023 are relevant to this Court's inquiry. In *In re Connaught Group, Ltd.*, the court recognized the intertwined nature of the class proof of claim issue and the class certification issue, stating: "While the issue before me concerns the certification of the class adversary proceeding and not the proof of claim, it is difficult to separate the two issues. Despite the different procedural requirements, including that Rule 23 does not automatically apply to the claims allowance process, it appears the substantive inquiry is the same." 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013).

views concerning the superiority of class actions over traditional bankruptcy resolution." *In re Protected Vehicles, Inc.*, 397 B.R. 339, 345 (Bankr. D.S.C. 2008). The Fifth Circuit stated:

> Within a bankruptcy case, [Collier on Bankruptcy] suggests that the superiority inquiry assumes added import . . . For this reason, it is notable that certain bankruptcy-related factors–including 'whether class certification will adversely affect the administration of the case'–are 'relevant to, and have been considered in the determination of, whether the requirements of Rule 23 have been met.'

*In re TWL*, 712 F.3d at 896 (quoting 10 COLLIER ON BANKRUPTCY ¶ 7023.03[3]). Bankruptcy-related factors include the cost to the debtor's estate of a class action proceeding,[5] the availability and ease of the proof of claim process, the number of claims filed in the bankruptcy proceeding, the number of orders entered regarding those claims, whether the debtor's assets have been liquidated, the average value of a class member's claim, and the impact any delay would have on the administration of the estate.

Here, it should first be noted that Affiliated Foods, not the plaintiffs, filed the motion for withdrawal of reference. *Morgan et al v. Affiliated Foods Southwest*, 4:15MC00011-JLH (E.D. Ark. May 1, 2015). In support of that motion, Affiliated Foods made two arguments: first,

> Because this adversary [proceeding] requires a consideration of both bankruptcy law and the WARN Act, the District Court must withdraw the reference pursuant to 28 U.S.C. § 157(d). The statute specifically uses the word "shall" which leaves no discretion.

No. 4:15MC00011, Document #1 at 3 ¶ 12. Second,

> In addition to the foregoing there is a question as to whether the Bankruptcy Court has the Constitutional authority to enter a final judgment as it relates to the WARN Act claims. Under the holding of *Stern v. Marshall*, 564 U.S. 2 (2011), this

---

[5] "Such a consideration is particularly relevant in . . . a Chapter 7 bankruptcy with insufficient assets to pay existing creditors." *In re TWL*, 712 F.3d at 896. But it would be error for a court to place too much emphasis on the cost to the estate at the expense of other factors. *Id.* at 896, n. 10.

14

>Court should withdraw the reference even if it is not required to do so under 28 U.S.C. § 157(d).

*Id.* at 3 ¶ 13. Affiliated Foods never explains how the bankruptcy claims process would be superior to a class action if withdrawal of the reference was mandatory and the bankruptcy court may be without authority to resolve the individual WARN Act claims. Regardless, based on the factors traditionally associated with Rule 23(b)(3) along with the bankruptcy-related factors, class resolution is superior to other methods for fairly and efficiently adjudicating the controversy.

Second, Affiliated Foods argues that by certifying the class, the Court will effectively be extending the bar date to allow creditors that did not file claims to receive a distribution and increase the amount of debt. Document #19 at 14. But the plaintiffs filed a class action complaint to initiate an adversary proceeding several months prior to the December 23, 2009, bar date. The bar date is not a relevant bankruptcy-related factor for the Court to consider in this case. Rather, the principal consideration is the effect class certification will have on the administration of the estate. "If the representative files a timely adversary proceeding or class proof of claim, and the Court denies a motion to certify the class, it should set a reasonable bar date to allow the members of the putative class to file individual claims." *In re Connaught Grp., Ltd.*, 491 B.R. 88, 97 (Bankr. S.D.N.Y. 2013) (citing *In re TWL*, 712 F.3d at 899)). Even if this Court denied class certification, individual former employees might still be permitted to file individual proofs of claim in the bankruptcy proceeding. *See Gentry*, 668 F.3d at 91 (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974)).

Further, if the Court were to deny certification and the claimants had to proceed individually through the claims procedure in bankruptcy court, it is clear that Affiliated Foods would zealously defend against those claims. The claimants would be left alone to defend their proofs of claims,

15

Case 4:15-cv-00296-JLH Document 42 Filed 04/26/16 Page 16 of 18

which would be impracticable because the claims are small. *See In re Bill Heard Enter., Inc.*, 400 B.R. 795, 803 (Bankr. N.D. Ala. 2009) (finding that it was in the best interests of the putative class members, judicial economy, and the defendant to adjudicate the WARN Act claims in one single action, rather than through hundreds of individual proofs of claims)). *See also In re Protected Vehicles*, 397 B.R. at 346 ("Here, the interest of the class members, the Debtor, and other creditors in judicial economy lies in single class adjudication rather than individualized adjudications. Additionally, and equally important, the employees should not be at the disadvantage of individually litigating complicated legal issues for relatively small recoveries using the contested matter procedures of the federal bankruptcy rules."). Resolving the plaintiffs' WARN Act claims collectively through a class action will be more efficient than handling them in a piece-meal fashion as individual proofs of claim in the bankruptcy proceeding.

Affiliated Foods has known of the class claim and the plaintiffs' intent to pursue relief if assets came into the estate, since July 10, 2009. Morgan and Kellett filed the class claim only two months after the petition date. Affiliated Foods agreed to stay the proceeding with the caveat that the plaintiffs would move to lift the stay if assets became available. Affiliated Foods represents that the trustee has come to a point where the estate is ready to make distributions, operating all along with full knowledge of the terms of the stay and the plaintiffs' intent to pursue resolution of their WARN Act claim through certification of a class action. Furthermore, the parties are before the Court on this issue because there are funds to pay the claim if it is allowed. Litigation of a class action here is superior than the bankruptcy claims process for adjudicating the WARN Act claims of Affiliated Foods' former employees. *See In re Truland Grp. Inc.*, 520 B.R. 197, 205-08 (Bankr.

16

E.D. Va. 2014); *In re ABMD Ltd.*, 439 B.R. 475, 488 (Bankr. S.D. Ohio 2010). The plaintiffs have fulfilled the requirements of Rules 23(a) and 23(b)(3).

## IV.

Federal Rule of Civil Procedure 23(c)(1)(B) dictates that an order certifying a class action must define the class and the class claims and must appoint class counsel. The Court adopts the definition proposed by the plaintiffs, Document #11 at 8, with the following modification: the phrase "who were terminated and/or laid off" will be replaced by "who were laid off, terminated, or both."[6] Affiliated Foods suggests that the Court limit the class to former employees who filed claims before the bar date, but for the reasons discussed in relation to superiority, the Court declines to impose such a limit. Document #19 at 32. The Court appoints Brenda Morgan and Donna Kellett as class representatives and appoints Lankenau & Miller, LLP, the Gardner Firm, P.C., and Cox, Sterling & McClure, PLLC, as class counsel. The Court adopts the notice proposed by the plaintiffs, finding that it complies with Rule 23(c)(2)(B). The parties must confer in good faith and submit an agreed-upon date by which the opt-out form must be received. If the parties cannot agree, they may submit separate dates, along with a statement of their objections to the date proposed by the opposing party.

## CONCLUSION

For the reasons stated above, the plaintiffs' motion for class certification is GRANTED. Document #11. The parties must confer in good faith and submit an agreed-upon date by which the

---

[6] As the Arkansas Supreme Court has explained: "The phrase [and/or] has been so roundly criticized as to have been driven almost entirely from current usage. At best it has been labeled equivocal, obscure, and meaningless, at worst slovenly, improper and a linguistic abomination. . . . It has no place in modern practice . . . ." *Boren v. Qualls*, 284 Ark. 65, 68, 680 S.W.2d 82, 84 (1984) (internal quotations omitted). *See also Kennedy v. Papp*, 294 Ark. 88, 92, 741 S.W.2d 625, 628 (1987); *Retro Television Network v. Luken Communications, LLC*, No. 4:11CV00489, 2012 WL 28689, *4 n.7 (E.D. Ark. Jan. 5, 2012).

opt-out form must be received.  If the parties cannot agree, they may submit separate dates, along with a statement of their objections to the date proposed by the opposing party.

     IT IS SO ORDERED this 26th day of April, 2016.

                                                            _____
                                                            J. LEON HOLMES
                                                            UNITED STATES DISTRICT JUDGE